UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | § | |
|    Plaintiff, | § | |
| | § | |
| VS. | § | NO.: 4:14-CV-02740 |
| | § | |
| NATIONAL LIABILITY & FIRE | § | |
| INS. CO.; INDEMNITY INS. CO. OF | § | |
| N. AMERICA; NEW YORK MARINE & | § | |
| GENERAL INS. CO.; NAVIGATORS INS. | § | |
| CO. and LIBERTY MUTUAL INS. CO., | § | |
|    Defendants. | § | |

**Underwriters' Motion for Summary Judgment on W&T's Consequential Damages Claims and Alternative Motion for JMOL**

National Liability and Fire Insurance Company ("Starr Marine"), Indemnity Insurance Company of North America ("IINA"), Navigators Insurance Company ("Navigators"), and New York Marine & General Insurance Company ("New York Marine") (all insurers collectively "Underwriters") file this motion for summary judgment and ask the Court to dismiss W&T Offshore's claim for consequential damages resulting from Underwriters' alleged breach of contract for refusal to pay policy proceeds. In Texas, as a matter of law, W&T cannot recover consequential damages under its breach-of-contract claim for two reasons.

1. In a breach-of-contract action, an insured is entitled to recover only under and by the terms of the policy. Underwriters' policies provide

coverage for debris-removal expenses and do not provide coverage for consequential damages or "lost business opportunities."

2. W&T's alleged consequential damages are neither the natural nor foreseeable consequence of Underwriters' alleged failure to pay under the policies.

In the unlikely event summary judgment is not granted, Underwriters move under FRCP 50(a) for judgment as a matter of law before the claims are submitted to the jury.

**Underwriters have not breached the insurance contract.**

If an insurer has not denied coverage, there can be no claim for breach of contract.[1] W&T has acknowledged that none of the excess liability Underwriters denied coverage before W&T filed its lawsuit in September 2014.[2] And Starr Marine first issued a reservation-of-rights letter after W&T filed its lawsuit.[3] In the event the Court finds that Underwriters breached the contract, W&T is only entitled to policy proceeds as actual damages.

**W&T's claims "lost business opportunities."**

On June 22, 2015, W&T Offshore filed its first-amended complaint alleging

---

1 *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins.*, No. CIV.A. H-10-2538, 2012 WL 142222, at *6 (S.D. Tex. Jan. 18, 2012); *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990); *see also Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998) (claim accrues when coverage is denied); *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 100 (Tex.1994) (claim accrues when insurer "first denied coverage").
2 Starr Marine's Appendix of Evidence is incorporated by reference. App. Ex. 10, T.Grabois depo., p.131, l. 19 through p.132, l.10; App. Ex. 3, L.Laurie depo (Sep. 15, 2016), p.80, ll.17-20 (W&T admitted that IINA, New York Marine and Navigators never denied the claim after the Fifth Circuit's reversal in the declaratory judgment action).
3 App. Ex. 10, T. Grabois Depo., p.131, l.19 through p.132, l.10.

that Underwriters breached certain insurance contracts (Policy Nos. MS-S 2775 and MS-S 2776) because Underwriters had not yet paid their proportionate share of policy limits for debris-removal expenses W&T incurred after Hurricane Ike.[4] W&T alleged that as a result of Underwriters' breach of contract, "W&T has sustained, and Underwriters are liable for, actual and consequential damages,"[5] including "lost business opportunities."[6]

On July 11, 2016, Underwriters took the deposition of W&T's corporate representative – W&T Vice President and Treasurer, Todd Grabois – designated to testify about W&T's claim for consequential damages. On behalf of W&T, Mr. Grabois explained that W&T's claim for consequential damages resulted from Underwriters' failure to pay policy proceeds of $35 million[7] and consisted of three items:  1) inability to pay down a revolving line of credit;[8] 2) inability to operate a rig that was "warm-stacked" on a W&T platform at Ship Shoal 349;[9] and 3) staff, management and board of directors' time "dealing with" the breach-of-contract lawsuit it filed against Underwriters.[10] W&T confirmed that it claims no other "lost business opportunities" as consequential damages resulting from Underwriters'

---

4 Doc. 29, p.16, para. 46.
5 Doc. 29, p.16, para.47.
6 Doc. 29, p.16, para.49.
7 App. Ex. 10, T.Grabois depo., p.123, ll.13-25.
8 App. Ex. 10, T.Grabois depo., p.123, ll.13-25.
9 App. Ex. 10, T.Grabois depo., p.123, ll.13 through p.124, ll.2.
10 App. Ex. 10, T.Grabois depo., p.123, ll.13 through p.124, ll.8.

alleged breach of contract.[11]

### 1. The excess-liability policies do not cover W&T's alleged consequential damages.

In a breach-of-contract action "the insured is entitled to recover only under and by the terms of the contract itself."[12] "[I]n the absence of bad faith or a controlling statute, the insured cannot recover consequential damages for breach of an insurance policy."[13]

W&T purchased excess liabilities policies from Underwriters that provided removal-of-wreck-and-debris coverage in excess of various underlying policies.[14] Underwriters agreed to "pay on behalf of the Insured those sums…that the Insured becomes legally obligated to pay by reason of liability imposed by law…."[15] The debris-removal coverage was afforded to W&T through the following policy endorsement, as contained in each of the excess liabilities policies.

**REMOVAL OF WRECK/DEBRIS ENDORSEMENT**

It is hereby understood and agreed that Removal of Wreck/Debris coverage is to apply and further defined the phrase "where

---

11 App. Ex. 10, T.Grabois depo., p.134, ll.11-17.
12 *Gross v. Connecticut Gen. Life Ins. Co.*, 390 S.W.2d 388, 390 (Tex.Civ.App. El Paso 1965).
13 *Standard Fire Ins. Co. v. Fraiman*, 588 S.W.2d 681, 683-84 (Tex.Civ.App. Houston [14th Dist.] 1979), writ ref'd n.r.e. (Mar. 19, 1980)(stating that consequential damages should not be awarded in "a normal suit upon an insurance policy").
14 Excess Liability Policy No. MS-S 2774 (Doc. 51-1, p. 49 of 60); Excess Liability Policy No. MS-S 2775 (Doc. 51-2, p. 50 of 60); Excess Liability Policy No. MS-S 2776 (Doc. 105-1, p. 60 of 69).
15 Doc. 51-1, p. 14 of 60.

compulsory by law" and "liability imposed upon the assured by law" and similar phrases in an insuring clause shall be deemed to include obligations arising under a court order, a law, statute, proclamation, regulation, rule, or guideline issued by or under the authority of a government (including without limitation any agency, department, or subdivision thereof), having jurisdiction over the insured, its people, property or equipment. In addition, coverage shall continue notwithstanding that an insured may agree in a contract to certain responsibilities where such responsibilities are "compulsory by law" or represent "liability imposed upon the assured by law" or are otherwise covered by the policy absent such contractual undertaking.[16]

This endorsement does not describe any coverage obligation beyond payment for debris-removal expense that is compulsory by law. Specifically, the policies do not afford coverage for lost business opportunities and do not provide any direct benefit for consequential damages.[17]

In *Hudspeth v. Enterprise Life Ins. Co.*, an insured argued that in addition to receiving disability payments as actual damages, she was entitled to consequential damages for the breach of the disability policy in the amount of the value of her repossessed car. She argued that without the disability payments, she was unable to make her car payments and, consequently, unable to keep her

---

16 Excess Liability Policy No. MS-S 2774 (Doc. 51-1, p. 49 of 60); Excess Liabilities Policy No. MS-S 2775 (Doc. 51-2, p. 50 of 60); Excess Liabilities Policy No. MS-S 2776 (Doc. 105-1, p.60 of 69).
17 *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 838-39 (Applying similar Louisiana law on contract construction, "The plain language of the Policy allows for recovery of 'actual loss or damage' and not consequential damage.")

vehicle.[18] The court of appeals rejected this argument and after interpreting the policy according to Texas rules for contract construction,[19] held that the general measure of damages under a disability policy included accrued payments plus interest and the present value of unaccrued payments that the plaintiff would have received if the contract had been performed.[20] The appellate court strictly limited the insured's damages to the value of the withheld disability payments, as provided by the disability policy.[21]

Like Ms. Hudspeth, W&T argues that without the payment for its debris-removal expense, it was, for example, unable to make payments on its business line of credit and unable to reduce its debt by $3.2 million, neither of which related to its debris-removal expense. Without a specific policy provision authorizing payment of additional amounts beyond actual debris-removal expense, W&T is not entitled to recover any consequential damages under a breach-of-contract theory.

### 2. W&T's "lost business opportunities" aren't natural or foreseeable consequences.

W&T has not provided any evidence that its "lost business opportunities" are natural or foreseeable consequences of Underwriters' alleged failure to pay

---

18 358 S.W.3d 373, 382 (Tex. App. – Houston [1st Dist.] 2011, no pet).
19 *Id.* at 381-82.
20 *Id.* at 382.
21 *Id.*

policy proceeds. In 2008-2009, when the parties entered into the insurance contracts, it was not foreseeable that in 8 years W&T would have incurred significant interest on amounts borrowed against a revolving line of credit, oil prices would force companies, including W&T, to stop drilling in the Gulf of Mexico, or W&T would have filed a lawsuit against its excess liability insurers even before they denied coverage. There is no authority to claim that an expense incurred in the normal course of business or causally unrelated to an insurance claim, is a foreseeable damage for denial or delay of coverage. No Texas case has held otherwise.

### a. The revolving line of credit is not related to debris-removal expense.

Mr. Grabois testified that had Underwriters timely paid the allegedly outstanding $35 million in debris-removal expense, W&T could have put that money toward its line of credit and avoided interest payments.[22] He testified that from March 2014 through mid-July 2016, W&T incurred approximately $3.2 million in interest on its revolving line of credit.[23] But Mr. Grabois admitted that W&T never used the revolving line of credit to pay for the debris-removal expenses it claimed under the policy.[24] The policy proceeds W&T claims were not destined to pay off these unrelated debts; rather, they would have been used by

---

22 App. Ex. 10, T.Grabois depo., p.124, l.17 through p.125, l.3.
23 App. Ex. 10, T.Grabois depo., p.124, l.9 through p.125, l.3.
24 App. Ex. 10, T.Grabois depo., p.125, ll.4-15.

the company to avoid interest on wholly unrelated, corporate debts.[25]

In addition, Mr. Grabois had no basis for choosing March 2014 as the date from which he calculated accrued interest of $3.2 million, he "just used it as a start date."[26] But Mr. Grabois admitted that he understood that as of March 2014, the parties were still in litigation, and Underwriters had a trial-court declaratory judgment of "no coverage" in their favor.[27] It is a legal and practical impossibility for Underwriters to have breached the policy at that point in time.

It is not a legally foreseeable consequence of an insurer's delay in paying a claim that its insured might, hypothetically, be harmed had it chosen to use that money to pay off corporate debt. W&T's argument essentially seeks to make insurers responsible for the consequences of independent business decisions made in the normal course before a claim ever occurred. W&T's choices to draw down on lines of credit at particular rates, borrow additional money or credit, and when to pay off lines of credit may evidence a business strategy, but they are not actions that can be legally attributed to or foreseen by excess insurers. W&T asks the court to assume that had the insurance been paid sooner, it would have encountered no unforeseen cash flow, cost overruns, contract liabilities or other investment projects, and would have used the insurance to pay down a line of

---

25 App. Ex. 10, T.Grabois depo., p.125, ll.4-22; p.126, ll.8-16.
26 App. Ex. 10, T.Grabois depo., p.127, l.25 through p.128, l.10.
27 *Id.*

credit it regularly used before and after the hurricane. Texas courts reject similar hypothetical evidence of lost profits and other consequential damages, and that law applies equally here to bar W&T's claim.[28]

### b. The Ship Shoal 349 platform was "warm-stacked" because of oil prices.

Mr. Grabois testified that another consequential damage W&T claims is related to W&T's inability to put one of its offshore platforms to use in 2015.[29] In Texas, lost profits that are largely speculative – from activities dependent on uncertain or changing market conditions, chancy business opportunities, entry into unknown or unviable markets, or the success of a new and unproven enterprise – cannot be recovered as consequential damages.[30]

The Ship Shoal 349 platform supported a Helmerich & Payne top-drive rig that had been under contract for several years.[31] In 2015, W&T decided to "warm-stack" the rig, which includes keeping the rig idle on location and paying to maintain the rig instead of actively using it.[32] Mr. Grabois testified that if W&T had received insurance benefits, it "may not have warm stacked [the rig]. We may

---

28 *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 85 (Tex. 1992)(evidence of consequential damages in the form of lost profits must be reasonably certain and bare assertion that contracts were lost does not demonstrate an objective determination of lost profits); *Hunter Bldgs. & Mfg. L.P. v. MBI Glob., LLC*, 436 S.W.3d 9, 17 (Tex. App. – Houston [14th Dist.] 2014, pet. denied)(evidence of specific loss causally tied to the breach of contract is necessary to support an award).
29 App. Ex. 10, T.Grabois depo., p.129, ll.2-6.
30 *Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265 (Tex. 2015).
31 App. Ex. 10, T.Grabois depo.,p.129, ll.10-12; ll.17-25.
32 App. Ex. 10, T.Grabois depo., p.130, ll.9-17.

have kept on drilling."[33]

W&T points to another factor influencing W&T's decision in 2015 to warm-stack the rig at Ship Shoal 349: the falling price of oil.[34] Mr. Grabois testified that even if W&T had the insurance benefits, the falling price of oil at that time was also a factor in deciding the future of the rig.[35] Mr. Grabois later testified that the price of oil was the "biggest factor obviously."[36] When asked whether W&T believed it could have made money on the Ship Shoal 349 in light of the declining oil prices in January 2015, Mr. Grabois testified that he did not know the future, anticipated flow rates of the well – an admittedly important variable in determining whether W&T lost a business opportunity.[37]

Ultimately, W&T does not quantify damages relating to the warm-stacked rig as a "lost business opportunity." Mr. Grabois confirmed that W&T claims a total of $3.2 million as consequential damages and that number relates directly and exclusively to his calculation of the accrued interest on the revolving line of credit.[38]

---

33 App. Ex. 10, T.Grabois depo., p.130, ll.18-22.
34 App. Ex. 10, T.Grabois depo., p.131, ll.5-18.
35 App. Ex. 10, T.Grabois depo., p.131, ll.14-18; p. 155, ll.2-15.
36 App. Ex. 10, T.Grabois depo., p.155, l.17 through p.156, l.8.
37 App. Ex. 10, T.Grabois depo., p.159, l.14 through p.160, l.21.
38 App. Ex. 10, T.Grabois depo., p.133, ll.12-25.

W&T offers nothing definitive to support the alleged lost business opportunity relating to Ship Shoal 349. W&T's assessment of the warm-stacked rig as a consequential damage related to Underwriters' failure to pay debris-removal expenses under the policies is speculative, at best.

### c. W&T claims employee time "dealing with" this lawsuit.

W&T claims but cannot justify consequential damages relating to the time W&T staff and board of directors put into this lawsuit.[39] Expenses of litigation are not recoverable as damages unless expressly provided by statute or contract.[40] This rule applies to a litigant's loss of time.[41] In addition, W&T sued Underwriters before Underwriters denied coverage, thus before Underwriters breached the insurance contract.[42]

## Conclusion

W&T cannot substantiate its claim for consequential damages. A plain reading of the debris-removal policy language does not include coverage for consequential damages. And W&T cannot provide any legal authority that paying down unrelated lines of credit, "warm-stacking" the Ship Shoal 349 as oil prices

---

39 App. Ex. 10, T.Grabois depo., p.147, l.23 through p.148, l.14.
40 *Hammonds v. Hammonds*, 158 Tex. 516, 313 S.W.2d 603, 605 (1958); *Wm. Cameron & Co., Inc. v. American Surety Co. of New York*, 55 S.W.2d 1032, 1035 (Tex.Comm'n App. 1932, opinion adopted).
41 *Phillips v. Latham*, 523 S.W.2d 19, 27 (Tex.Civ.App. Dallas 1975, writ ref'd n. r. e.)(Time lost because of the pendency of a lawsuit, including depositions and attendance at trial is an expense of litigation.)
42 App. Ex. 10, T.Grabois depo., p.131, l. 19 through p.132, l.10; App. Ex. 3, L.Laurie depo., p.80, ll.17-20 (W&T admitted that IINA, New York Marine and Navigators never denied the claim after the Fifth Circuit's reversal in the declaratory judgment action.)

plummeted, and devoting the time and energy of W&T personnel to suing Underwriters are natural or foreseeable consequences of Underwriters' alleged delay of or failure to pay policy proceeds. Underwriters ask the Court to grant this motion for summary judgment and dismiss W&T's consequential-damage claim, with prejudice to refiling. In the alternative, Underwriters move for judgment as a matter of law before the consequential-damages claims are submitted to the jury.

Respectfully submitted,

**HALL MAINES LUGRIN, P.C.**

By:  /s/ *J. Clifton Hall III*
J. Clifton Hall III
Attorney-in-Charge
TX No. 00793204
Fed. No. 20250
2800 Post Oak Blvd., 64th Floor
Houston, Texas  77056
Telephone: 713-871-9000
Facsimile:  713-871-8962
chall@hallmaineslugrin.com

OF COUNSEL:
Karen K. Milhollin
(TX No. 00790180) (Fed. No. 18038)
kmilhollin@hallmaineslugrin.com
Candace A. Ourso
(TX No. 24008952) (Fed. No. 23217)
courso@hallmaineslugrin.com
ATTORNEYS FOR NATIONAL LIABILITY &
FIRE INSURANCE COMPANY

**BROWN SIMS, P.C.**

By:   /s/ Robert M. Browning
     Kenneth G. Engerrand
     Texas State Bar No. 06619500
     Federal I.D. No. 2078
     kengerrand@brownsims.com
     Robert M. Browning
     Texas State Bar No. 00796264
     Federal I.D. No. 21097
     rbrowning@brownsims.com
     1177 West Loop South, Tenth Floor
     Houston, Texas 77027-9007
     Telephone: (713) 629-1580
     Facsimile: (713) 629-5027

**LARZELERE PICOU WELLS SIMPSON LONERO, LLC**

By:   /s/ Wilson L. Maloz III
     J. Daniel Picou
     Texas State Bar No. 24029015
     Email: jpicou@lpwsl.com
     Wilson L. Maloz III
     Texas State Bar No. 24080600
     Email: wmaloz@lpwsl.com
     3850 N. Causeway Blvd., Suite 1100
     Metairie, Louisiana 70002
     Telephone: 504.834-6500
     Facsimile: 504.834-6565

*Attorneys-in-Charge for Defendant Navigators Insurance Company, New York Marine & General Insurance Company, and Indemnity Insurance Company of North America*

## CERTIFICATE OF SERVICE

      I certify that on 03 October 2016 a copy of the above and foregoing was served on counsel of record via electronic mail.

Fred Hagans
Scott G. Burdine
William G. Hagans
Hagans Burdine Montgomery
   & Rustay, P.C.
3200 Travis, Fourth Floor
Houston, Texas 77006
fhagans@hagans-law.com
sburdine@hagans-law.com
whagans@hagans-law.com

Wilson L. Maloz, III
J. Daniel Picou
Larzelere Picou Wells Simpson
   Lonero, LLC
3850 N. Causeway Blvd., Suite 1100
Two Lakeway Center
Metairie, LA 70002
wmaloz@lpwsl.com
jpicou@lpwsl.com

Matthew S. Parish
Keith R. Taunton
Taunton, Snyder & Slade
580 Westlake Park Blvd., Suite 1120
Houston, TX 77079
mparish@tsslawfirm.com
ktaunton@tsslawfirm.com

Robert M. Browning, Jr.
Kenneth G. Engerrand
Brown Sims, PC
1177 W. Loop South, 10th Floor
Houston, TX 77027-9007
rbrowning@brownsims.com
kengerrand@brownsims.com

Warren W. Harris
Jeffrey L. Oldham
Bracewell, LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
T: 713.221.1490
F: 713.221.2199
warren.harris@bracewelllaw.com
jeff.oldham@bracewelllaw.com

                                  /s/ J. Clifton Hall III
                                    J. Clifton Hall III